# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 10, 2021

Lyle W. Cayce
Clerk

———————

No. 20-60462

———————

MICHAEL T. RUSHING,

*Plaintiff—Appellant*,

*versus*

YAZOO COUNTY, *a political subdivision of the State of Mississippi by and through its governing authority*, THE BOARD OF SUPERVISORS OF YAZOO COUNTY; VAN R. FOSTER, *in his official capacity and individually*; DAVID BERRY, III, *in his official capacity and individually*; WILLIE WRIGHT, *in his official capacity and individually*; JAYNE H. DEW, *in her official capacity and individually*; COBIE COLLINS, *in his official capacity and individually*; ALVA PEYTON TAYLOR, *Yazoo County Public Defender*, *in her official capacity and individually*; MISSISSIPPI PUBLIC EMPLOYEES RETIREMENT SYSTEM, *a duly created and empowered agency of the State of Mississippi, by and through its Counsel and Policy Advisor*, DAVETTA LEE, *in her official capacity*,

*Defendants—Appellees*.

———————

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:18-CV-764

———————

No. 20-60462

Before Owen, *Chief Judge*, and Jolly and Dennis, *Circuit Judges*.
Per Curiam:*

This appeal requires us to decide whether a former assistant county public defender timely filed a lawsuit to recover retirement and other employment benefits denied him by a county board of supervisors. The district court concluded he did not and entered summary judgment against him. He appeals. We agree with the district court: The public defender's claims are time-barred, and no tolling doctrine applies. Consequently, we AFFIRM the district court's judgment.

## I.

Mississippi counties are run by boards of supervisors. No matter the county—Alcorn to Adams, Panola to Perry—these boards govern. They can tax. Miss. Code Ann. § 19-3-41. They can contract. *Id.* And they can legislate (on a limited basis). *Id.* § 19-3-40(1). But they also wield a lesser-known power: They can establish a county public defender office. *Id.* § 25-32-1. This civil-rights appeal arises from a board's exercise of that power to create a public defender office whose lawyers, the county decided, would not receive county employment benefits.

The details of such offices are defined by statute. Once a county public defender office is established, a county judge appoints the public defender. *Id.* § 25-32-3(1). The public defender, in turn, appoints assistant public defenders—if, that is, the board has "authorized" assistants. *Id.* § 25-32-3(2). The public defender and her assistants may be full- or part-time. *Id.* §§ 25-32-1, 25-32-5. If full-time, they may not maintain a private

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-60462

law practice. *Id.* § 25-32-5. If part-time, however, they "may engage in the private practice of the law as long as such practice does not relate to the prosecution of criminal matters." *Id.* Their compensation is not fixed by statute; it is set by the board of supervisors. *Id.* § 25-32-3(2).

Another item not fixed by statute is the eligibility of public defenders for membership in the Public Employees' Retirement System of Mississippi (PERS). Established in 1952, PERS provides retirement coverage for eligible employees in state service. *See id.* § 25-11-101. A regulation adopted by PERS' Board of Trustees—Regulation 36—governs eligibility. *See* 27 Miss. Admin. Code Pt. 210, R. 1:36. Under Regulation 36, an individual may be eligible for PERS membership if he meets four basic requirements. *See id.* R.1:36(102). First, he must be "properly classified as an employee." *Id.* Second, his compensation must be "properly reported on IRS Form W-2." *Id.* Third, he must be "paid regular periodic compensation." *Id.* Fourth, he must be "treated as an employee for all general purposes, including, but not limited to, eligibility for fringe benefits, payment of employment-related expenses, payroll tax withholding, etc." *Id.* A county public defender may be eligible for PERS membership if he meets these requirements.

By 1997, Yazoo County had enough "indigent defendant cases," Miss. Code Ann. § 25-32-1, to warrant a public defender office. So the Board of Supervisors established one. The order establishing the office ("1997 Order") provided for the appointment of a public defender and two assistant public defenders. The appointments were on a "part-time basis," and the annual salaries were fixed at $50,000. Those salaries did not cover "office, secretarial and other expenses." And the positions did not include benefits. In fact, the 1997 Order specified that the "Public Defender and

3

assistants shall not receive retirement, insurance, workmen's compensation and other fringe benefits of employees of the county."

That same year, Michael Rushing joined the Yazoo County Public Defender Office as an assistant public defender. When he received his first paycheck, in mid-December, he learned that he had not been enrolled in PERS, and that he was not receiving county employment benefits. He knew that his compensation was not being reported on a W-2 form, and he maintained a private law practice throughout his tenure. He left the office in 1999, when the incoming chief public defender decided not to re-appoint him.

Rushing's failure to secure a re-appointment put him in a "financial bind." To help his finances, in May 2000, he opted to obtain a refund of the PERS contributions made on his behalf during his tenure as a municipal court judge from 1992 to 1999. As a result of the refund, Rushing "waive[d] and relinquish[ed]" any and all PERS rights that had accrued. Miss. Code Ann. § 25-11-117(1).

The Yazoo County Public Defender Office was terminated in 2005, but the Board re-established it in 2008. The order that re-established the office ("2008 Order") resembles the 1997 Order that established it. The 2008 Order directed a county judge to appoint the public defender, who would then appoint three assistant public defenders. Like the 1997 Order, the 2008 Order stated that all of the appointments would be "part-time," and none of the appointees would "receive retirement, insurance, workmen's compensation" or "other fringe benefits of employees of the county."

In accord with the 2008 Order, a county judge appointed Alva Taylor Yazoo County Public Defender. Taylor, in turn, appointed Rushing as one of three assistant public defenders.

No. 20-60462

Rushing's second stint at the office stretched from January 2009 to November 2017. He maintained a private law practice during his second stint, as he did during his first. He knew within 30 to 45 days of re-joining the office that he was not enrolled in PERS, and that he was not receiving benefits. By the end of each year, he knew that his compensation for the prior year had not been reported on a W-2 form. About 60 to 90 days after re-joining the office, however, he began questioning why it lacked basic resources, like office supplies and a copier. He had spoken to public defenders in other Mississippi counties and had learned that other offices were better funded. Around the same time, he asked his supervisor, Yazoo County Public Defender Alva Taylor, about the reason for the lack of resources; Taylor responded, "it's not in our contract" with the Board. This was not correct. In fact, the lack of resources stemmed from the terms of the 1997 and 2008 Orders, but Rushing did not know this because he had not read the orders.

Believing he had been illegally denied county employment benefits, Rushing wrote Wiley J. Barbour, the attorney for the Board. In this July 11, 2014 letter, Rushing claimed Yazoo County public defenders were public employees entitled to "[f]ull participation" in PERS and to "any and all other benefits . . . to which all other public employees within the state have been and are now entitled." On behalf of himself and the two other assistant public defenders, Rushing demanded "to have our past and present status as public employees recognized by the county and to receive that to which we have been entitled throughout our respective terms of service to Yazoo County."

The letter led to a discussion with Barbour. In mid-July, Rushing told Barbour that he intended to raise the concerns identified in the letter at a

Board meeting. Barbour "discouraged" Rushing from asking to be placed on the Board's agenda and told Rushing his complaints "would not be favorably received." Rushing considered this a "friendly warning" and grew concerned he would be fired if he complained at a Board meeting. Still, Rushing never told the Yazoo County Administrator about his concerns, and Rushing never asked to be placed on the agenda for a Board meeting.

After meeting with Barbour, Rushing turned to PERS. He met with Davetta Lee, Counsel and Policy Advisor for PERS, in September 2014. He told Lee that he thought he should be enrolled in PERS by virtue of his assistant public defender position. In response, Lee directed Rushing to documents—including the 1997 Order and the 2008 Order—establishing that his position was part-time and without benefits. Lee then explained the requirements for PERS eligibility. Rushing had to be "properly classified" as an employee; his wages had to be "properly reported" on a W-2 form; and he had to be "treated as an employee for all general purposes," including "eligibility for fringe benefits." 27 Miss. Admin. Code Pt. 210, R. 1:36(102). Lee also explained the "20/80 Rule": Employees are not eligible for PERS unless they work at least "20 hours per week or a total of 80 hours per month." *Id.* R. 1:36(103)(2)(a)(i). Because the Board had classified Rushing as a part-time contractor and had denied him benefits, Lee explained, Rushing was not eligible for membership in PERS. If Rushing believed he was being misclassified, Lee continued, Rushing needed to resolve that dispute with the Board of Supervisors; PERS could not re-classify him as a public employee eligible to receive benefits when the Board, acting through its minutes, had denied benefits.

After failing to convince PERS to enroll him, Rushing returned to work—but "under protest." Had he been enrolled in PERS and

No. 20-60462

contributing to the system throughout his second stint, his right to retirement benefits would have "vested" in January 2017, after eight years of state service. *See* Miss. Code Ann. § 25-11-109(1). But he was not enrolled, and he did not contribute to the system. So no right "vested" when his second stint drew to a close.

Rushing resigned from his assistant public defender position on November 15, 2017 and filed suit on November 1, 2018.

## II.

Rushing sued everyone conceivably involved in the decision not to extend to him county employment benefits. That included Yazoo County, the Board of Supervisors and five Board members, Yazoo County Public Defender Alva Taylor, PERS, and PERS Counsel and Policy Advisor Davetta Lee. His claims fell into three categories: claims for violations of § 1983, claims based on breaches of fiduciary duties, and a request for a declaratory judgment. All of Rushing's claims are bottomed on the denial of his right to county employment benefits, including membership in PERS.

The first category of claims, those brought under § 1983, involved alleged violations of equal protection, procedural due process, and substantive due process. As for equal protection, Rushing claimed "Defendants" "singl[ed] out a discre[t][e] and insular minority of [p]ublic [d]efenders from all other county employees." This "singl[ing] out" stemmed from the 1997 Order and the 2008 Order and referred to the Board's decision not to extend to public defenders the employment benefits extended to other county employees. As for procedural due process, Rushing claimed "Defendants" "den[ied] him notice or an opportunity to be heard" before the Board. The alleged denial occurred during his July 2014 conversation with Jay Barbour, the Board's attorney, when Barbour told

Rushing that his complaints would not be "favorably received" by the Board. Rushing considered this statement "a denial of the right to be heard." Finally, as for substantive due process, Rushing complained "Defendants" denied him employment benefits and membership in PERS; he claimed he was constitutionally entitled to both.

Rushing based the second category of his claims, those for breach of fiduciary duty, on three omissions. First, "Defendants" failed to classify him as a county employee eligible to receive benefits. Second, "Defendants" failed to inform him that they would rely on PERS's 20/80 Rule, and that he needed to "keep a time sheet" to prove compliance with that rule. Finally, Alva Taylor misrepresented that the public defender office had a contract with the Board.

The third and final category of claims proved the easiest to comprehend. Rushing sought a declaratory judgment that Yazoo County and PERS must "work together to enroll him as a member of PERS, with all retroactive credits allowable by law."

After some discovery on these claims, the defendants moved for summary judgment. The district court granted the motions and dismissed Rushing's claims as time-barred. It concluded that the limitations period was, at most, three years; that each claim accrued more than three years before suit was filed; and that no tolling doctrine applied. Given these conclusions, it entered a take-nothing judgment. Rushing timely appeals.

## III.

We review the grant of summary judgment de novo. *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (per curiam). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any

No. 20-60462

material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit." *Id.* We view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *Adams v. Alcolac, Inc.*, 974 F.3d 540, 543 (5th Cir. 2020) (per curiam).

## IV.

Rushing challenges the summary judgment dismissing his claims as time-barred. We resolve his challenge in three parts. First, we determine the limitations periods that apply. Second, we determine when each claim accrued. Finally, we determine whether a tolling doctrine applies.

## A.

Rushing brings § 1983 claims for the denial of equal protection and due process. There is no federal limitations period for § 1983 claims, so we borrow the forum state's residual personal-injury limitations period. *See Bargher v. White*, 928 F.3d 439, 444 (5th Cir. 2019). Mississippi is the forum state, and its residual personal-injury limitations period, Miss. Code Ann. § 15-1-49, is three years. *See Edmonds v. Oktibbeha Cnty.*, 675 F.3d 911, 916 (5th Cir. 2012) (citing Miss. Code Ann. § 15-1-49). Because Rushing filed suit on November 1, 2018, and a three-year limitations period applies, any § 1983 claims that accrued before November 1, 2015 are time-barred unless a tolling doctrine applies.

Rushing also brings claims for breach of fiduciary duty under Mississippi law. These claims are governed by the three-year residual limitations period, Miss. Code Ann. § 15-1-49. *See Anderson v. LaVere*,

9

No. 20-60462

136 So. 3d 404, 411 (Miss. 2014). Still, the defendants have asked us to apply a shorter, one-year limitations period under the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-11(3)(a). Because the two-year difference in the lengths of these limitations periods does not change the outcome of this appeal, we will assume—without deciding—that the longer, three-year residual limitations period applies. Accordingly, as with the § 1983 claims, any breach-of-fiduciary-duty claims that accrued before November 1, 2015 are time-barred unless a tolling doctrine applies.

Having settled, as a matter of applicable law, on a three-year limitations period for all claims, we turn to consider when each claim accrued.

## B.

We analyze accrual separately for each of Rushing's claims. We first consider accrual of his § 1983 claims. After that determination, we consider accrual of his claims for breach of fiduciary duty under Mississippi law.

## 1.

The date a § 1983 claim accrues is a question of federal law. *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Under our precedent, a § 1983 claim accrues, and the limitations period begins to run, "'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'" *Russell v. Bd. of Trs.*, 968 F.2d 489, 493 (5th Cir. 1992) (quoting *Rodriguez v. Holmes*, 963 F.2d 799, 803 (5th Cir. 1992)). The plaintiff "need not realize that a legal cause of action exists; [he] need only know the facts that would support a claim." *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995). We turn to consider when Rushing

No. 20-60462

became aware, or should have become aware, of the facts supporting each of his § 1983 claims. *See Russell*, 968 F.2d at 493.

**a.**

We begin with Rushing's § 1983 claim for denial of equal protection. For this claim, Rushing asserts that "Defendants" "singl[ed] out" public defenders for disfavored treatment by denying them the benefits county employees enjoy. The decision to deny benefits stems from the 1997 Order and the 2008 Order. Rushing admits he had actual knowledge of these orders by late 2013 or early 2014. By then, he became aware, or should have become aware, that the Board had denied public defenders the benefits county employees receive. *See id.* At the latest, he became aware that public defenders had been denied benefits in July 2014. That month, he wrote the Board's attorney a demand letter complaining that public defenders had been misclassified as "contractors" (rather than county employees), and claiming that public defenders had been wrongfully denied the benefits afforded county employees, such as participation in PERS. Under even the latest of these dates, Rushing's claim accrued more than three years before he filed suit in November 2018. This claim is time-barred unless a tolling doctrine applies.

**b.**

We turn next to the § 1983 claim for the denial of procedural due process. Rushing claims "Defendants" "den[ied] him notice or an opportunity to be heard" before the Board. Under his theory of this claim, the "denial" stems from his July 2014 conversation with the Board attorney, when the attorney told Rushing his complaints would not be "favorably received" by the Board. Rushing became aware, or should have become aware, of the facts supporting this claim when the conversation occurred. *See*

No. 20-60462

*id.* So this claim accrued in July 2014, more than three years before Rushing filed suit. Like the equal protection-claim, this claim is time-barred unless a tolling doctrine applies.

**c.**

We now turn to the last of Rushing's § 1983 claims: his claim for denial of substantive due process. Under his theory of this claim, "Defendants" violated substantive due process when they denied him membership in PERS and other benefits of county employment. That denial traces to the 1997 Order and the 2008 Order, which specified that public defenders like Rushing would "not receive retirement, insurance, workmen's compensation and other fringe benefits of employees of the county." As noted, Rushing admits he had actual knowledge of these orders by late 2013 or early 2014. By then, he became aware, or should have become aware, that the Board had denied public defenders PERS and other benefits of county employment. *See id.* At the latest, he became aware that public defenders had been denied membership in PERS and other benefits of county employment in July 2014, when he wrote the demand letter to the Board attorney. Even using the latest of these dates, Rushing's claim accrued more than three years before he filed suit in November 2018. So this claim is time-barred unless a tolling doctrine applies.

**d.**

As we have noted, Rushing had actual knowledge of the facts underlying each § 1983 claim more than three years before he filed suit. Still, he insists his claims did not accrue until much later. He makes two arguments on this score.

12

First, he contends his claims did not accrue until he resigned from his position or "vested" with a right to retirement.  For it was not until then, he reasons, that he could have collected retirement benefits and filed this lawsuit.  We disagree.  As relevant here, the (allegedly) unlawful act is the Board's classification of him as a part-time contractor ineligible for county employment benefits, including PERS retirement.    That act was accomplished through the 1997 Order and the 2008 Order, and Rushing had actual knowledge of the existence, content, and effect of both orders by July 2014, at the latest.  Rushing's ultimate inability to receive retirement benefits upon "vesting" or resignation is merely a consequence of the earlier unlawful act—more specifically, "a delayed, but inevitable, consequence," *Del. State Coll. v. Ricks*, 449 U.S. 250, 257–58 (1980), of the Board's decision not to extend benefits to county public defenders.  *See Chardon v. Fernandez*, 454 U.S. 6, 8 (1981) (per curiam) (anchoring accrual to the time of the unlawful act, "not the point at which the consequences of the act become painful" (citing *Ricks*, 449 U.S. at 258)).  Because we assess accrual from the moment the plaintiff " 'has sufficient information to know that he has been injured,' " *Russell*, 968 F.2d at 493 (quoting *Rodriguez*, 963 F.2d at 803), not from each moment he feels the effects of a singular, earlier injury, *see, e.g.*, *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 519 (5th Cir. 1998), we reject Rushing's first accrual argument and turn to his second.

For his second argument, Rushing invokes the continuing-violation doctrine, which is "a federal common law doctrine governing accrual." *Heath v. Bd. of Super's for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017).  He contends a new claim accrued each time Yazoo County issued him a paycheck without making deductions for the benefits he says he was owed.  We are not persuaded.  "The continuing violation doctrine does not apply to claims based on discrete actions," *Gen. Land Office v. U.S. Dep't*

*of the Interior*, 947 F.3d 309, 319 (5th Cir. 2020) (citing *Doe v. United States*, 853 F.3d 792, 802 (5th Cir. 2017)), even if those actions are "'serial,'" *Doe*, 853 F.3d at 802 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).   At their core, Rushing's claims are based on two discrete actions: the Board's adoption, first in 1997 and then in 2008, of orders denying public defenders the benefits that county employees receive. Because Rushing's claims are based on two discrete actions, he is "not entitled to the shelter of the continuing violation doctrine." *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003); *cf. Berry v. Allstate Ins. Co.*, 84 F. App'x 442, 444 (5th Cir. 2004) (per curiam) (continuing-violation doctrine did not apply in suit to recover retirement benefits because employer's decision to deny benefits was a "one-time event").

In sum, each of Rushing's § 1983 claims accrued more than three years before Rushing filed suit, and Rushing is not entitled to relief under the federal continuing-violation doctrine.  Accordingly, each of Rushing's § 1983 claims is time-barred unless a tolling doctrine applies.  Having determined when each of Rushing's § 1983 claims accrued, we turn to consider accrual of his claims for breach of fiduciary duty under Mississippi law.

**2.**

In addition to § 1983 claims, Rushing brings claims for breach of fiduciary duty under Mississippi law.  We look to state law to determine when these state-law claims accrued. *See Meyers v. Moody*, 693 F.2d 1196, 1206 (5th Cir. 1982), *cert. denied*, 464 U.S. 920 (1983).  As we have noted, under Mississippi law, claims for breach of fiduciary duty are governed by the three-year residual limitations period. *See* Miss. Code Ann. § 15-1-49.  A claim subject to that period accrues, at the latest, when "the plaintiff has discovered, or by reasonable diligence should have discovered, the injury."

No. 20-60462

*Id.* § 15-1-49(2).  Using this definition of accrual,  we consider when each of Rushing's three breach-of-fiduciary-duty claims accrued for purposes of the residual limitations period.

**a.**

For his first claim, Rushing asserts that "Defendants" breached a fiduciary duty to "correctly classify" him as a county employee eligible for benefits.  Under Rushing's theory of this claim, "the injury," *id.*, is not being classified as a county employee eligible for benefits.  The 1997 Order and the 2008 Order accomplished that misclassification.  Rushing had actual knowledge of both orders by late 2013 or early 2014.  By then, he had "discovered, or by reasonable diligence should have discovered, the injury." *Id.*  At the latest, Rushing actually "discovered[] . . . the injury," *id.*, in July 2014, when he wrote the demand letter to the Board attorney, complaining of the misclassification that gives rise to this claim.  Even using the latest of these dates, this claim accrued more than three years before Rushing filed suit.

**b.**

For his second claim, Rushing asserts that "Defendants" breached their fiduciary duty to tell him (a) that they would rely on PERS's 20/80 Rule, and (b) that he needed to "keep a time sheet" to prove compliance with that rule.  Under Rushing's theory of this claim, "the injury," *id.*, is "Defendants'" reliance on the 20/80 rule and failure to inform him of that rule.  At the latest, Rushing "discovered, or by reasonable diligence should have discovered," *id.*, that injury in September 2014, when PERS Counsel and Policy Advisor Davetta Lee advised Rushing of the 20/80 rule. Accordingly, this claim accrued more than three years before Rushing filed suit.

No. 20-60462

**c.**

For his third claim, Rushing asserts that Alva Taylor, then the Yazoo County Public Defender, misrepresented to him that the public defender office had a contract with the Board.  Here, "the injury," *id.*, is the alleged misrepresentation.  That misrepresentation was made sometime between "late" 2012 and "the middle of" 2014.  During that same time period, Rushing "discovered," *id.*, that no contract existed.  That discovery is confirmed by Rushing's July 2014 demand letter; in it, he "point[ed] out that there is no contract" between the public defender office and the Board.  At the latest, this claim accrued in July 2014, more than three years before Rushing filed suit.

In sum, each of Rushing's claims for breach of fiduciary duty accrued more than three years before Rushing filed suit in November 2018.  So each claim is time-barred unless a tolling doctrine applies.  Having fully analyzed accrual, we turn to consider the final part of this appeal—tolling.

**C.**

Thus, finally, we must decide whether a tolling doctrine saves Rushing's otherwise time-barred claims.  We apply state tolling provisions in § 1983 cases.  *E.g.*, *Rodriguez*, 963 F.2d at 803 (citing *Hardin v. Straub*, 490 U.S. 536, 543 (1989) and *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992) (per curiam)).  Rushing raises two related tolling theories: equitable tolling and equitable estoppel.[1]  We consider each in turn.

---

[1] We do not consider Rushing's "void *ab initio*" argument because he raised it for the first time on appeal.  *See Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021).  To the extent he intends to argue that Mississippi's continuing-tort doctrine applies, he has forfeited the argument by inadequately briefing it; he cites no

No. 20-60462

Under Mississippi law, "[t]he doctrine of equitable tolling provides that the running of the statute of limitations is suspended when 'a plaintiff's delay in filing [a complaint] is caused by the defendant's misrepresentation.'" *Strickland v. S. Panola Sch. Dist.*, 134 So. 3d 367, 369 (Miss. Ct. App. 2013) (quoting *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss. 1998)). Rushing has presented no evidence that the misrepresentation of any defendant *caused* him to file his complaint in November 2018—more than four years after he had actual knowledge of *all* of the facts forming the basis of *all* of his claims. His failure to file before then is attributable to him and him alone. Accordingly, he is not entitled to equitable tolling.

Nor is he entitled to equitable estoppel. Equitable estoppel "is an extraordinary remedy that should be used with caution." *Simmons Hous., Inc. v. Shelton ex rel. Shelton*, 36 So. 3d 1283, 1287 (Miss. 2010) (citing *Adams v. Greenpoint Credit, LLC*, 943 So. 2d 703, 709 (Miss. 2006) (en banc)). To equitably estop the defendants from raising a statute-of-limitations defense, Rushing "must present proof of inequitable conduct by the defendants." *Townes v. Rusty Ellis Builder, Inc.*, 98 So. 3d 1046, 1055 (Miss. 2012) (citing *Miss. Dep't of Pub. Safety v. Stringer*, 748 So. 2d 662, 666–67 (Miss. 1999) (en banc)). Specifically, he must show that (1) the defendants induced him not to file his complaint sooner; (2) his claim was time-barred as a result of that inducement; and (3) the defendants knew or had reason to know that his claim would be time-barred as a result of the inducement. *See id.* (quoting *Harrison Enters., Inc. v. Trilogy Commc'ns, Inc.*, 818 So. 2d 1088, 1095 (Miss.

---

authority to support application of the doctrine here. *See Innova Hosp. San Antonio Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 732 (5th Cir. 2018).

No. 20-60462

2002) (en banc)). Rushing can show none of these elements. He has no evidence that any defendant induced him to wait until November 2018 to file his complaint; no evidence that his untimely filing resulted from an inducement, rather than his own lack of diligence; and no evidence that any defendant knew or had reason to know that any hypothetical inducement would cause his claim to be time-barred. Accordingly, we reject Rushing's equitable-estoppel argument.

## V.

We now sum up. In this opinion, we have considered only the timeliness of Rushing's claims—not their merits. First, we have determined that Mississippi's three-year residual limitations period applies to his § 1983 claims, and we have assumed, without deciding, that the same period applies to his claims for breach of fiduciary duty. Second, we have concluded that each of his claims accrued more than three years before he filed suit. Finally, we have rejected each of the tolling theories he has proposed. Because each of his claims accrued more than three years before he filed suit, and no tolling doctrine applies, his claims are time-barred. Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.